IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| JEMIKA JOHNSON AND, ) <br> ESTATE OF BABY JOY JOHNSON ) <br> ) <br>     Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> RAPPAHANNOCK REGIONAL ) <br> JAIL AUTHORITY, ET AL. ) <br> ) <br>     Defendants. ) | Civil Action No. 1:23-cv-01024 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
PARTIAL MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Defendants Paul Wallace ("Wallace"), Gregory Coleman ("Coleman"), Tony Coles ("Coles"), Joseph Jackson ("Jackson"), Patrick O'Connor ("O'Connor"), Terrence Shell ("Shell"), Shawn Connolly ("Connolly"), Stephenie Brown ("Brown"), Peter Teye ("Teye"), and Rappahannock Regional Jail Authority ("RRJ") (collectively "Defendants"), by counsel and under Fed. R. Civ. P. 12(b)(6), submit this Memorandum of Law in Support of their Partial Motion to Dismiss Plaintiff's Second Amended Complaint. Plaintiff's claims against Defendants are subject to dismissal on several grounds.

### I.    PROCEDURAL AND FACTUAL BACKGROUND

In her Second Amended Complaint ("SAC"), Plaintiff asserts claims against the Rappahannock Regional Jail Authority ("RRJ") and certain of its employees, involving 42 U.S.C. §1983, the Americans with Disabilities Act ("ADA"), the Rehabilitation Act ("RA"), and the Affordable Care Act ("ACA"). Plaintiff's claims allegedly stem from purported due process violations and improper medical treatment during her incarceration at RRJ. *See generally* Second

1

Am. Complaint (ECF 176). The Second Amended Complaint classifies Wallace, Coles, Jackson, and O'Connor as "Cell Check Officers," and Connolly, Brown, and Teye as "Hearing Officers." *Id.* at ¶ 9, 11. Plaintiff alleges the "Cell Check Officers" were "on duty in administrative segregation on August 2, 2021, and into the early morning of August 3, 2021, when Ms. Johnson went into labor". *Id.* at ¶ 9. The "Hearing Officers" allegedly "were responsible for evaluating incident reports involving Ms. Johnson and oversaw disciplinary proceedings against Ms. Johnson." *Id.* ¶ 11. Plaintiff does not categorize Defendants Coleman or Shell as either "Cell Check Officers" or "Hearing Officers" but alleges they were "on duty in administrative segregation frequently from May 19, 2021, through August 3, 2021." *Id.* ¶ 24.

Plaintiff alleges she arrived at RRJ as a pre-trial detainee on May 19, 2021, and was immediately housed in an isolated cell in administrative segregation. SAC at ¶ 16. Prior to her incarceration, she had been diagnosed with schizoaffective disorder. *Id.* ¶ 14. Plaintiff alleges that throughout her detainment she exhibited "obvious signs of psychosis delusions, disorganized thoughts, grandiose speech, and breaks with reality" and that "it was clear and consistently documented that she was experiencing an ongoing, overt mental health crisis." *Id.* ¶ 18. Additionally, Plaintiff alleges that on May 20, 2021, a classification counselor noted Plaintiff's need for additional medical assessment, monitoring of her physical capacity and emotional stability, and need for Mental Health Services and Medical Services. *Id.* ¶ 17.

Plaintiff asserts that despite these recommendations, she was never medicated, and that Defendants failed to secure treatment for her from a licensed psychiatrist or physician at any time prior to her going into labor. *Id.* ¶ 19. Additionally, on June 21, Plaintiff alleges she was administered a pregnancy test which returned positive and that Defendants "failed to secure [her] a prenatal examination by a qualified physician." *Id.* ¶ 21. Between May 19, 2021, and August 3,

2021, Plaintiff alleges she made "multiple requests" to see a nurse, which were "ignored or outright denied by [Defendants] Coleman and . . . Shell." *Id.* ¶ 26.

Further, Plaintiff alleges RRJ employees initiated "disciplinary hearings" against her despite her lack of capacity to understand her procedural rights or the questions being asked, which she claims exacerbated her mental health symptoms. *Id.* ¶ 29. On June 3, Plaintiff refused to transfer cells. *Id.* ¶ 31. An RRJ officer allegedly documented "mental health" as the reason she failed to obey orders. *Id.* A "disciplinary" hearing was held, but Plaintiff did not participate. *Id.* ¶ 32. Defendant Connolly read the charge to Plaintiff at her cell door because she did not participate. *Id.* Connolly restricted Plaintiff's privileges for three days and imposed three days of isolation. *Id.* ¶ 33. Pursuant to her initial classification in administrative segregation, *see* ¶ 2, Plaintiff remained there when her privileges were restored. *Id.* ¶ 34. On June 16, 2021, Plaintiff again refused to relocate and was charged with failure to obey orders. *Id.* ¶ 35. She did not participate in the hearing relating to this charge on June 21, 2021, and, for that reason, Defendant Brown read the charges at Plaintiff's cell door. *Id.* ¶ 35. Brown imposed the same restrictions as Connolly, and Plaintiff remained in administrative segregation after the restriction lifted. *Id.* ¶¶ 37-39.

On June 29, Plaintiff received an additional charge "related to her behavior," but the hearing on the charge originally scheduled for July 2 was postponed due to Defendant Teye's "belief that [she] needed an active mental health alert." *Id.* ¶¶ 40-41. Plaintiff remained in administrative segregation, where she had been classified to stay since her arrival, during this alert. *Id.* ¶ 42. The hearing was subsequently held on July 7 and Plaintiff participated, though she "responded in an incoherent manner." *Id.* ¶ 43. Though unclear, Plaintiff alleges Teye "ended the hearing . . . due to [Plaintiff's] 'mental health history,'" found her "guilty" based on the officer's

3

report but did not impose any restriction due to "time served." *Id.* ¶ 44. On July 21,2021, two months after Plaintiff's arrival and classification into the administrative segregation unit based on her intake questionnaire and jail's procedures, the Institutional Classification Committee conducted a re-assessment of her classification and determined Plaintiff would remain in administrative segregation on medical isolation. *Id.* ¶ 46.

Plaintiff claims the Defendants violated her constitutional rights under the Fourteenth Amendment as a pre-trial detainee (Claim I & II) and discriminated against her because of her disability in violation of the ADA, the RA, and the ACA (Claims III, IV, and V). Plaintiff's procedural due process claim fails because (1) it is time-barred; and (2) Plaintiff has not alleged any deficiencies in the process. As well, qualified immunity shields the Hearing Officers from liability. Plaintiff's ADA and RA claims are also time-barred. Finally, Plaintiff fails to state any discrimination claim because she has not alleged any facts showing Defendants' conduct was motivated by her alleged disability. Accordingly, the Court must dismiss Claims II, III, IV, & V.

## II.   STANDARD OF REVIEW

The Defendants move for partial dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), which permits dismissal when a plaintiff fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555.

A court should construe factual allegations in the nonmoving party's favor and will treat them as true, but is "not so bound with respect to [the complaint's] legal conclusions." *Dist. 28, United Mine Workers, Inc. v. Wellmore Coal Corp*., 609 F.2d 1083, 1085 (4th Cir. 1979). A court

4

will accept neither "legal conclusions drawn from the facts" nor "unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). Further, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive dismissal, Plaintiff must allege facts sufficient to state all the elements of her claim. *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). A plaintiff must provide the grounds of her entitlement to relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Furthermore, plaintiffs must plead enough facts to "nudge[] their claims across the line from conceivable to plausible," and the Court should dismiss a complaint that is not "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S. at 679. In determining whether the plaintiff has met this plausibility standard, the court must take as true all well-pleaded facts in the complaint and in any documents incorporated into or attached to the complaint. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). To state a claim, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft*, *supra*, 556 U.S. at 676.

### III.  ARGUMENT

**A. Plaintiff's Procedural Due Process Claim**

1. **<u>Plaintiff's Fourteenth Amendment claim of procedural due process fails because she has not alleged any deficiencies in the process she was given.</u>**

Plaintiff's procedural due process claim fails because she has not alleged that any disciplinary segregation was imposed on her; nor has she alleged that the process she *was* given violated any procedural requirements. Plaintiff's procedural due process allegations against the "Hearing Officer Defendants" arise from several hearings that occurred during her detainment. She claims that during these hearings, the Hearing Officer Defendants violated her constitutionally established liberty interests. *See* SAC ¶¶ 87-88. Plaintiff alleges the "disciplinary segregation imposed on [her] by the Hearing Officers, and the subsequent decisions to keep [her] in administrative segregation without proper process, represented a deprivation of [her] liberty interest without constitutionally adequate process." *Id.* ¶ 92. However, she does not allege that the Hearing Officer Defendants imposed disciplinary segregation, or that they decided to "keep her in administrative segregation." *See id.* Plaintiff arrived at RRJ and, upon immediate assessment and classification, was placed in administrative segregation pursuant to jail policies and procedures for inmates who refused the COVID-19 test and for inmates with mental health conditions.

The level of process to which a pretrial detainee is entitled depends on whether restrictions are imposed for disciplinary or administrative purposes. *Williamson*, 912 F.3d at 175. "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974).

> Jail officials may impose nonpunitive restrictions on a pretrial detainee for disciplinary or administrative reasons, but, as these restrictions implicate a detainee's liberty interests, she is entitled to certain procedural protections. Where restrictions are imposed as a disciplinary measure of institutional misconduct, the detainee must be provided notice, a hearing, and a written explanation of the

6

> disciplinary action taken. Where such restrictions are imposed instead for administrative reasons, the detainee is owed some notice of the proposed action and an opportunity to present her views. In addition, the detainee must be afforded periodic review of his confinement.

*Tate v. Parks*, 791 F. App'x 387, 390 (4th Cir. 2019) (citing *Williamson*, 912 F.3d at 174-77) (citations omitted). A restriction imposed for "administrative reasons" includes managerial and security needs. *Williamson*, 912 F.3d at 175. Virginia law also dictates certain requirements to meet the constitutional threshold of due process. *See generally* 6 VA. ADMIN. CODE § 15-40, *et seq* (2024). The Virginia Administrative Code states a jail's written policy, procedure, and practice shall "specify the handling of mental health inmates" and "regulate the movement of inmates within the facility." 6 Va. Admin. Code §§ 15-40-1010, 15-40-1060. As well,

> Whenever an inmate is punished, such as reprimands or loss of privileges, the minimum procedural requirements shall include: (1) the accused inmate shall have an opportunity to explain or deny the charge; and (2) [t]he inmate shall have the opportunity to appeal any finding of guilt to the facility administrator or designee.

6 Va. Admin. Code § 15-40-835. Finally, nonmedical correctional staff are entitled to rely on the medical judgment and expertise of medical and mental health providers concerning the course of treatment necessary for an inmate. *See Shakka v. Smith*, 71 F.3d 162, 167 (4th Cir. 1995).

When Plaintiff arrived at RRJ, an RRJ counselor conducted a psychological and medical assessment of her to determine her classification and recommend a cell-block placement most appropriate for her needs. *See* SAC ¶¶ 17-18. In her constitutional claim, Plaintiff alleges the Hearing Officers "were aware [she] lacked the requisite capacity to be properly granted her procedural right to a hearing" and "failed to consider [her] schizoaffective disorder and active symptoms of psychosis when considering the appropriateness of disciplinary action arising from [her] behavior." SAC ¶ 90. Further, Plaintiff asserts the Hearing Officers also never "attempted to determine whether [she] had the capacity to knowingly refused to obey order or understand her

7

rights." *Id.* ¶ 38. As in her two previous Complaints, Plaintiff contradicts herself by stating the Hearing Officers both ***never attempted to determine whether she had capacity*** (SAC ¶ 38) and ***were aware she lacked capacity*** (SAC ¶ 90). Not only are these assertions inconsistent with one another, but they ignores that the Hearing Officers, as non-medical officials, were permitted to rely on the determinations of medical providers. *See Shakka*, 71 F.3d at 167.

Plaintiff attempts to portray her detention in administrative segregation as a consequence of procedurally deficient disciplinary actions taken against her and initially imposed by Defendant Connolly on June 7, 2021. *See* SAC ¶¶ 32, 88. Plaintiff paints a picture of her languishing in isolation as punishment, "continuing to be held in administrative segregation" without reassessment by Hearing Officers until August 3. *See id.* ¶¶ 34, 38, 45. Yet she concedes that on July 27, the Institutional Classification Committee conducted a reassessment and determined Plaintiff should be placed on medical isolation. *Id.* ¶ 49. Plaintiff describes this decision as disciplinary, in an apparent attempt to apply the heightened procedural processes required of disciplinary actions.

The restrictions imposed on June 7 and June 21, following Plaintiff's refusal to relocate on June 3 and June 16, *see Id* ¶¶ 31- 33, 35-37, were administrative rather than disciplinary. Written policies and practices at the jail specify the "handling of mental health inmates" and "regulate the movement of inmates within the facility." *See* 6 Va. Admin. Code §§ 15-40-1010, 15-40-1060. Managerial and security responses by the facility are "administrative," and Plaintiff's refusals to transfer implicate managerial and security concerns and responses. *See Williamson*, 912 F.3d at 175. For administrative restrictions, "the detainee is owed some notice of the proposed action and an opportunity to present her views." *Tate v. Parks,* 791 F. App'x 387, 390 (4th Cir. 2019). Plaintiff acknowledges she received notice and was provided an opportunity to present her views, but she

declined to do so. SAC ¶¶ 32, 36. After the restrictions were lifted, Plaintiff remained in administrative segregation, where she had been classified to stay since arrival. Moreover, the hearing on July 7, 2021, did not implicate Plaintiff's liberty interests because no restrictions were imposed. *Id.* ¶ 44.

Accordingly, Claim II should be dismissed.

### 2. In the alternative, Plaintiff's Fourteenth Amendment procedural due process claim fails because it is barred by the two-year statute of limitations.

Plaintiff's claim against the Hearing Officers is barred by the two-year statute of limitations. Because § 1983 does not provide its own statute of limitations, courts apply the statute of limitations applicable to personal injury claims in the relevant state. *See Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995); *Demuren v. Old Dominion Univ.*, 33 F. Supp. 2d 469, 476 (E. D.Va. 1999). Virginia applies a two-year statute of limitations to personal injury claims. *See* Va. Code § 8.01-243(A) ("[E]very action for personal injuries, whatever the theory of recovery, . . . shall be brought within two years after the cause of action accrues.").

The two-year statute of limitations required Plaintiff to bring any § 1983 claim within two years of its accrual. A claim accrues when the plaintiff learns of her injury or is put on notice to inquire into the existence of a claim. *See United States v. Kubrick*, 444 U.S. 11, 123 (1979); *Nasim*, 64 F.3d at 995. Plaintiff's procedural due process claim against the Hearing Officers is based on proceedings held on June 7, June 21, July 2, July 7, and July 27, 2021. *See* SAC ¶¶ 88. Thus, her claim against the Hearings Officers accrued as of June 7, 2021 at the earliest and as of July 27, 2021 at the latest. Thus, the statute of limitations ran on July 27, 2023. Plaintiff did not file her first Complaint until August 1, 2023. Thus, her claim is time-barred and subject to dismissal.

### 3. In the alternative, Plaintiff's procedural due process claim is barred by qualified immunity.

Even if Plaintiff has sufficiently alleged a procedural due process violation against the Hearing Officers, qualified immunity bars her claim. There is no clearly established law requiring jail officials to determine the legal competence of a detainee prior to each institutional hearing. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When a defendant asserts the affirmative defense of qualified immunity, the court must determine "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right[,]" and "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* at 232 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). In its discretion, the court may address either prong first based upon the "circumstances in the particular case at hand." *Id.* at 236.

Regarding the second factor, "the lodestar for whether a right was clearly established is whether the law gave the officials fair warning that their conduct was unconstitutional." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008). The court must inquire into "whether it would have been apparent to a reasonable officer in the defendant's position that his actions violated the [right]." *Altman v. City of High Point*, 330 F.3d 194, 200 (4th Cir. 2003). At the motion to dismiss stage, the court must determine whether the facts as alleged establish that the Defendants' actions themselves are objectively legally reasonable. *Harlow*, 457 U.S. at 819.

Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341 (1986). Thus, government or jail officials performing discretionary functions from liability for civil damages and claims if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person

would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). "Immunity protects law enforcement officers from "bad guesses in gray areas" and ensures that they are liable only "for transgressing bright lines." *Maciariello v. Sumner,* 973 F.2d 295, 298 (4th Cir. 1992). The government official "should prevail on an assertion of qualified immunity if a reasonable officer possessing the same information could have believed that his conduct was lawful." *Slattery v. Rizzo*, 939 F.2d 213, 216 (4th Cir. 1991).

Plaintiff alleges the Hearing Officers violated her due process rights by imposing restrictions despite awareness that she "lacked the requisite capacity to be properly granted her procedural right to a hearing." SAC ¶ 88. However, the Fourth Circuit has never held that before imposing a disciplinary restriction, a jail official must determine the legal competency of the pretrial detainee in the same way that a court must determine legal competency of a defendant to stand trial. Therefore, Plaintiff's arguments assume – erroneously – that such a law existed, and that the Hearing Officers violated it. Qualified immunity exists to protect government officials against this exact tactic.

Furthermore, Plaintiff's own allegations show that the Defendants took efforts to accommodate her mental health needs and to assess her condition. Any "reasonable officer possessing the same information could have believed that his conduct was lawful." *Slattery*, 939 F.2d at 216. Accordingly, the Hearing Officers are entitled to qualified immunity and Claim II is subject to dismissal.

**B. Plaintiff's Federal Claims.**

    **1. <u>Plaintiff's RA and ADA claims are barred by the one-year statute of limitations.</u>**

Similar to § 1983, the RA and ADA do not provide a statute of limitations. *See M.S v. Fairfax Cnty. Sch. Bd.*, 1:05cv1476 (JCC), 2006 U.S. Dist. LEXIS 53323, at *13 (E. D. Va. Mar.

20, 2006). Federal courts thus "borrow the state statute of limitations that applies to the most analogous state-law claim." *Jamison v. Kassa*, No. 3:22cv552, 2023 U.S. Dist. LEXIS 81268, *6 (E. D. Va. May 9, 2023) (quoting *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 347 (4th Cir. 2011) (citations omitted)). The Virginia Rights of Persons with Disabilities Act is the most analogous state law to the RA and provides a one-year statute of limitations. *See Wolsky v. Medical College of Hampton Rds.,* 1 F3d 222, 224 (4th Cir. 1993). Because the ADA was modeled after and so closely resembles the RA, the Fourth Circuit's reasoning in *Wolsky* extends to ADA claims. *See Childress v. Clement*, 5 F. Supp. 2d 384, 388 (E. D. Va. 1998) ("The ADA was closely modeled on the RA and was intended to extend its protections into the private sector . . ." therefore "the Fourth Circuit's reasoning in *Wolsky* regarding the RA extends to the ADA").[1]

In an attempt to sidestep the one-year statute of limitations applicable here, Plaintiff alleges that "without the assistance of medication, [her] Schizoaffective Disorder impacts all aspects of her major life activities," but with medication, "she is able to live independently," "support herself financially," and "does not present as having a disability." *See* SAC ¶ 15. The ADA Amendments Act ("ADAA") broadened the definition of disability under both the ADA and the RA. 42 U.S.C. § 12102(4)(A) ("The definition of disability in this chapter shall be construed in favor of broad

---

[1] The weight of authority agrees that the statute of limitations for ADA claims in Virginia is one year. *See Lewis v. Aetna Life Ins. Co*., 993 F. Supp. 382, 385 (E.D. Va. 1998); *see also Teye v. Dep't of Corr*., 2009 U.S. Dist. LEXIS 3022, 2009 WL 87459, at *8 (W.D. Va. Jan. 9, 2009); *Thompson v. Va. Dep't of Game and Inland Fisheries*, 2006 U.S. Dist. LEXIS 29796, 2006 WL 1310363, at *3 (W.D. Va. May 14, 2006), *aff'd*, 196 Fed. Appx. 164 (4th Cir. 2006); *M.S. v. Fairfax County Sch. Bd*., 2006 U.S. Dist. LEXIS 39759, 2006 WL 721372, at *4 (E.D. Va. March 20, 2006), *vacated in part on other grounds*, 553 F.3d 315, 2009 WL 81654 (4th Cir. 2009); *Childress v. Clement*, 5 F. Supp. 2d 384, 388-89 (E.D. Va. 1998). *But cf. Morrissey v. Rockingham Mem'l Hosp*., 2006 U.S. Dist. LEXIS 4627, 2006 WL 297741, at *2 (W.D. Va. Feb. 7, 2006) (adopting the two-year personal injury statute of limitations); *Peters v. Blue Ridge Reg'l Jail*, 2006 U.S. Dist. LEXIS 92294, 2006 WL 3761624, at *2 (W.D. Va. Dec. 21, 2006) (same).

coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter."). The amendments to the ADA expressly include episodic impairments in the definition of disability and provide that mitigating measures such as medication should not be considered in determining whether an impairment substantially limits a major life activity and thus qualifies as a disability. 42 U.S.C. § 12102(4)(D), (E). Instead, the term "disability" now includes [a]n impairment that is episodic or in remission" if the impairment "would substantially limit a major life activity when active." 42 U.S.C. § 12102(4)(D). Defendants do not dispute Plaintiff's alleged disability. However, Defendants dispute that Plaintiff's claim arises solely out of the ADAA and thus dispute that a four-year statute of limitations applies.

Plaintiff's schizoaffective disorder is neither episodic nor in remission, and she has not alleged as such. In *Latson v. Clarke*, the plaintiff argued the 2008 Amendments to the ADA ("ADAAA"), *see* 42 U.S.C.S. § 12102, made his ADA and RA claims viable because his conditions – autism spectrum disorder ("ASD") and intellectual disability ("ID") – were "episodic in nature" and "not consistently recognized as disabilities under the original ADA." 346 F. Supp. 3d 831, 858 (W.D. Va. 2018*)*. The Western District, however, held that plaintiff's ADA and RA claims "were **not** made possible by the ADA Amendments Act, and he therefore [could not] avail himself of the four-year catch all limitations period. The fact that [plaintiff] "had occasional outbursts and episodes of aggression related to his ASD [did] not render the conditions of ASD itself episodic. Rather . . . ASD and ID are lifelong disabilities that are ever present and do not go into remission."' *Id* at 858. Similarly, Plaintiff's schizoaffective disorder is a lifelong disability that does not go into remission. While schizoaffective disorder may be managed with medication, as Plaintiff alleges, the permanence of the disorder is uncontested. The presence of medication does not make the disorder temporary or episodic. While the *symptoms* may occur episodically,

13

the *disorder itself* is not. In other words, just as Plaintiff's need to medicate is permanent and lifelong, so too is her disability. *See* SAC ¶ 15; *Latson*, 346 F. Supp. at 858.

This Court has applied Virginia's one-year statute of limitations to disability claims based on schizophrenia and other similar mental illnesses. *See Thorpe v. Va. Dep't of Corr.*, 2021 U.S. Dist. LEXIS 112284, at *26 (E.D. Va. Jun. 15, 2021). Because Plaintiff's condition is not episodic, the applicable statute of limitations is the one-year limitations period under the Virginia Rights of Persons with Disabilities Act. *See Latson*, 346 F. Supp. at 859; *Thorpe*, 2021 U.S. Dist. LEXIS 112284 at *26. Accordingly, Plaintiff had one year from the accrual of her RA and ADA claims to file suit, yet she did not do so until August 1, 2023. Her RA and ADA claims accrued well before August 1, 2022, and all actions referenced in the Second Amended Complaint occurred before August 1, 2022.

### 2. **Plaintiff's Second Amended Complaint fails to state any discrimination claim.**

Plaintiff fails to provide any factual allegations to support the legal conclusion that she was discriminated against because of her disability. SAC ¶ 117. Plaintiff alleges Defendants Wallace, Coles, Jackson, O'Connor, Coleman, and Shell discriminated against her by "repeatedly denying [her] virtually daily written and oral requests for adequate medical care," "denying her equal access to basic hygienic needs such as regular showers," and "denying her equal access to the paperwork necessary to formally request medical and mental health services." *Id.* ¶¶ 117-19, 129. Plaintiff further alleges Defendants Coleman and Shell discriminated against her by "harassing and humiliating her when she attempted to advocate for her medical needs." *Id.* ¶ 120, 129. Finally, Plaintiff alleges the Hearing Officers discriminated against her by "proceeding with disciplinary hearings against [her] when she was obviously not competent to proceed and initiating punishments." *Id.* ¶ 122, 129. In her ACA claim, Plaintiff alleges only that "the actions undertaken

14

by Defendants constitute discrimination on the basis of disability that prevented [her] from equally accessing medical and public services. *Id*. ¶ 139. However, Plaintiff does not allege which discriminatory actions the Defendants committed.

Moreover, the ADA provides that "no qualified individual with a disability shall, **by reason of such disability**, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 4 2 U.S.C. § 12132 (emphasis added); *Pa. Dep't of Corr. v. Yesky*, 524 U.S. 206, 210-13 (1998). The Fourth Circuit Court of Appeals has repeatedly held that "[t]he ADA and RA generally are construed to impose the same requirements," and "[b]ecause the language of the Acts is substantially the same, we apply the same analysis to both." *Spencer v. Earley*, 278 Fed. Appx. 254, 261 (1999) (quoting *Baird*, 192 F.3d at 468); *see also Doe v. Univ. of Md. Medical Sys. Corp.*, 50 F.3d 1261, 1264 n.9 (4th Cir. 1995). Additionally, under the ACA, "an individual shall not, on the ground prohibited under . . . [section 504 of the RA] be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity[.]" 42 U.S.C. § 18116(a). Thus, a plaintiff seeking recovery under these statutes must allege that (1) she has a disability; (2) she is otherwise qualified to receive the benefits of a public service, program, or activity; and (3) she was "excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, **on the basis of h[is] disability**." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005) (emphasis added).[2]

---

[2] *See also Basta v. Novant Health Inc.*, 56 F.4th 307, 314 (4th Cir. 2022); *Francois v. Our Lady of the Lake Hosp., Inc.*, 8 F.4th 370, 378 (5th Cir. 2021) ("For disability-discrimination claims, the ACA incorporates the substantive analytical framework of the RA."); *Doe v. BlueCross BlueShield of Tenn.*, 926 F.3d 235, 239 (6th Cir. 2019) (noting that "the Affordable Care Act picks up the standard of care for showing a violation of § 504") (emphasis omitted); *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1210 (9th Cir. 2020) ("[T]o state a claim for a Section 1557 violation, [plaintiffs] must allege facts adequate to state a claim under Section 504 of the RA.").

Here, Plaintiff's allegations regarding a purported violation of the ADA, RA, and ACA, fail to allege that any of the purported conduct was motivated by Plaintiff's alleged disability. Specifically, Plaintiff claims the Hearing Officers discriminated against her by proceeding with disciplinary hearings "when she was obviously not competent to proceed and initiating punishments . . . due to or in spite of her inability to participate in the proceedings against her." SAC ¶ 122. However, Plaintiff specifically alleges Defendant Teye postponed a hearing because of a mental health alert, and that any restrictions imposed were due to the underlying charges against her – not because of her non-participation in proceedings. *See id.* ¶¶ 31-46. These allegations fail to show any action was taken ***because*** of Plaintiff's alleged disability. Finally, the ACA claim includes no allegations about any Defendant or any other RRJ employee. As such, Plaintiffs ADA, RA, and ACA claims are subject to dismissal.

### IV. CONCLUSION

Defendants respectfully request this Court dismiss Claims II, III, IV, and V of Plaintiff's Second Amended Complaint.

Dated: May 3, 2024

**RAPPAHANNOCK REGIONAL JAIL AUTHORITY, PETER TEYE, SHAWN CONNOLLY, STEPHENIE BROWN, GREGORY COLEMAN, TERRENCE SHELL, PAUL WALLACE, JOSEPH JACKSON, PATRICK O'CONNOR, TONY COLES**

/s/ Martin A. Conn
Martin A. Conn (VSB No. 39133)
Taylor D. Brewer (VSB No. 82041)
Rebecca A. Roberts (VSB No. 99542)
**MORAN REEVES & CONN PC**
1211 East Cary Street
Richmond, Virginia 23219
Telephone: (804) 864-4805
Facsimile: (804) 421-6251

tbrewer@moranreevesconn.com  
mconn@moranreevesconn.com  
rroberts@moranreevesconn.com

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 3rd day of May, 2024, I electronically filed the foregoing pleading using the CM/ECF System, which will send notifications of the filing to all counsel of record:

>Joshua Erlich, Esq. (VSB No. 81298)
>Katherine L. Herrmann, Esq. (VSB No. 83203)
>**The Erlich Law Office, PLLC**
>1550 Wilson Blvd. #700
>Arlington, VA 22209
>Telephone (703) 791-9087
>Facsimile: (703) 722-9292
>jerlich@erlichlawoffice.com
>kherrmann@erlichlawofice.com
>*Counsel for Plaintiff*
>
>Nicole M. Rheault (D.C. Bar No. 1780028) (*pro hac vice*)
>Aderson Francois (D.C. Bar No. 498544) (*pro hac vice*)
>Genevieve Mesch (D.C. Bar No. 90008005) (*pro hac vice*)
>**CIVIL RIGHTS CLINIC**
>**GEORGETOWN UNIVERSITY LAW CENTER**
>600 New Jersey Avenue NW, Suite 352
>Washington, DC 20001
>Phone: (202) 661-6506
>Nicole.Rheault@georgetown.edu
>Aderson.Francois@georgetown.edu
>Genevieve.Mesch@georgetown.edu
>*Counsel for Plaintiff*

>/s/ Martin A. Conn_____
>Martin A. Conn, Esq. (VSB No. 39133)
>Taylor D. Brewer, Esq. (VSB No. 82041)
>Rebecca A. Roberts, Esq. (VSB No. 99524)
>**MORAN REEVES & CONN PC**
>1211 East Cary Street
>Richmond, Virginia 23219
>(804) 864-4805 – Telephone
>(804) 421-6251 – Facsimile
>mconn@moranreevesconn.com
>tbrewer@moranreevesconn.com
>rroberts@moranreevesconn.com
>*Counsel for Defendants*