**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**
Alexandria Division

---

|  |  |  |
|---|---|---|
| JEMIKA JOHNSON | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | **Case No. 1:23-cv-01024 (LMB/WEF)** |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| | ) | |
| RAPPAHANNOCK REGIONAL | ) | |
| JAIL AUTHORITY, ET AL., | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

---

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS
PAUL WALLACE, GREGORY COLEMAN, TONY COLES, JOSEPH JACKSON,
PATRICK O'CONNOR, TERRENCE SHELL, SHAWN CONNOLLY,
STEPHENIE BROWN, PETER TEYE, AND
RAPPAHANNOCK REGIONAL JAIL AUTHORITY'S MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT**

Plaintiff Jemika Johnson opposes the Motion to Dismiss Ms. Johnson's Second Amended Complaint (ECF No. 178) filed by Defendants Paul Wallace, Gregory Coleman, Tony Coles, Joseph Jackson, Patrick O'Connor, Terrence Shell, Shawn Connolly, Stephenie Brown, Peter Teye, and Rappahannock Regional Jail Authority ("RRJA") (collectively "Defendants").

Ms. Johnson's Second Amended Complaint was filed pursuant to this Court's March 22 Order, which required her to amend her complaint to omit claims and defendants dismissed after substantial briefing on Motions to Dismiss. (ECF No. 175). Ms. Johnson's Second Amended Complaint raises no new claims and names no additional defendants. Defendants cannot use this opportunity to relitigate arguments already presented to this Court, and their Motion to Dismiss Ms. Johnson's Second Amended Complaint should be denied.

1

## BACKGROUND

Ms. Johnson's Second Amended Complaint ("SAC") sets forth claims against two categories of Defendants: (1) Hearing Officers, composed of Shawn Connolly, Stephenie Brown, and Peter Teye; and (2) Cell Check Officers, composed of Paul Wallace, Tony Coles, Joseph Jackson, and Patrick O'Connor. The SAC further states claims against Rappahannock Regional Jail Authority ("RRJA") as well as individual officers Gregory Coleman and Terrence Shell.

The following table provides the claims stated by Ms. Johnson against each Defendant or category of defendants, as well as those challenged in Defendants' Motion to Dismiss:

|  | **Stated Against Defendants** | **Challenged in MTD** | **Grounds for Challenge** |
|---|---|---|---|
| **Count I: Fourteenth Amendment Violation** | Hearing Officers | Challenged in MTD by Hearing Officers | Failure to State Claim; Timeliness; Qualified Immunity |
| **Count II: Fourteenth Amendment Violation** (Medical Care) | Cell Check Officers; Ofc. Shell; and Ofc. Coleman | Not challenged in Defendants' Motion to Dismiss | N/A |
| **Count III: Violation of the ADAAA** | RRJA; Hearing Officers; Cell Check Officers; Ofc. Shell; and Ofc. Coleman | Challenged by all named Defendants | Timeliness; Failure to State Claim |
| **Count IV: Violation of the RA** | RRJA; Hearing Officers; Cell Check Officers; Ofc. Shell; and Ofc. Coleman | Challenged by all named Defendants | Timeliness; Failure to State Claim |
| **Count V: Violation of the ACA** | RRJA; Hearing Officers; Cell Check Officers; Ofc. Shell; and Ofc. Coleman | Challenged by all named Defendants | Failure to State Claim |

Defendants do not challenge Count II of Plaintiff's SAC against Cell Check Officers, Ofc. Shell, and Ofc. Coleman.[1]

Ms. Johnson plausibly alleged a timely claim against Hearing Officers based on actions clearly established to constitute a violation of her procedural due process rights. In addition, the allegations in Ms. Johnson's SAC describe actionable discriminatory conduct by all named Defendants in violation of the ADAA, Rehab Act, and ACA. Finally, because a four-year statute of limitations applies to Ms. Johnson's ADAA, Rehab Act, and ACA claims, all three claims have been timely filed against Defendants.

For these reasons, this Court should deny Defendants' Motion to Dismiss Counts I, III, IV, and V of Ms. Johnson's Second Amended Complaint and permit Ms. Johnson to proceed to discovery on all of these claims.

## STANDARD OF REVIEW

When ruling on a motion brought pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), this Court "must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017). A Rule 12(b)(6) motion to dismiss "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020). Rather, a complaint survives a motion to dismiss if it contains sufficient factual allegations to rise above the speculative level and state a claim that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 70 (2007). "Moreover, when an action implicates

---

[1] Defendants' Motion to Dismiss provides that it challenges Count II, rather than Count I, of Plaintiff's Second Amended Complaint. Plaintiff has assumed this to be in error, as Defendants' argument focuses on Ms. Johnson's claim of procedural due process violations by the Hearing Officers.

a civil rights interest, [courts] must be especially solicitous of the wrongs alleged and must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged." *Shaw v. Foreman*, 59 F.4th 121, 127 (4th Cir. 2023).

## ARGUMENT

Defendants' Motion to Dismiss should be denied because Ms. Johnson has timely and sufficiently alleged claims against Defendants for the violation of  her Fourteenth Amendment right to be free from deprivations of her liberty without due process and for violations of her statutory rights under the Americans with Disabilities Act Amendments Act of 2008 ("ADAA"), Rehabilitation Act ("Rehab Act"), and Affordable Care Act ("ACA") to not be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity, on the basis of disability.


**I.      Ms. Johnson Plausibly Alleges Hearing Officers' Violation of Her Procedural Due Process Rights.**

Ms. Johnson's Second Amended Complaint alleges Hearing Officers' having prolonged her solitary confinement throughout her detention at Rappahannock Regional Jail ("RRJ") following disciplinary proceedings that lacked the procedural protections to which Ms. Johnson is constitutionally entitled. Hearing Officers took these actions with either an express intent to punish her or for reasons unrelated to any legitimate nonpunitive governmental objective. In either case, the Hearing Officers violated Ms. Johnson's rights.

Even if the nature of her confinement was, as alleged by Defendants, administrative rather than disciplinary, Ms. Johnson remained entitled to a level of process that Hearing Officer Defendants failed to provide.[2]

A.  Ms. Johnson Plausibly Alleges Hearing Officers Subjected Her to Isolation in Solitary Confinement and Restricted Privileges as Punishment for Misconduct.

"[P]retrial detainees retain a liberty interest in freedom from punishment." *Williamson v. Stirling*, 912 F.3d 154, 181 (4th Cir. 2018) (internal quotation marks omitted). Disciplinary measures imposed on a pretrial detainee for misconduct "implicate a pretrial detainee's liberty interest in remaining free from punishment and thus trigger procedural protections." *Id*. (citing *Bell v Wolfish*, 441 U.S. 520, 540 (1979); *Dilworth v. Adams*, 841 F.3d 246, 251–53 (4th Cir. 2016)). "Prior to conviction . . . a pretrial detainee's liberty interests do not categorically yield to the managerial interest of the jail authorities." *Williamson*, 912 F.3d at 184.

Restrictions placed on a pretrial detainee are disciplinary in nature if they are not "rationally related to a legitimate, nonpunitive government purpose or can be deemed excessive in relation thereto." *Williamson*, 912 F.3d at 185 (citing *Bell*, 441 U.S. at 537-39). While Defendants challenge the disciplinary nature of Ms. Johnson's segregation, their position is not supported by Ms. Johnson's allegations and raises a factual issue that cannot properly be resolved at the motion to dismiss stage. *Id.* (explaining that factual disputes regarding the nature of confinement restrictions must be determined by a jury).

---

[2] Defendants' classification of Ms. Johnson's isolation as "administrative segregation," does not overcome the disciplinary nature of their actions. The Fourth Circuit squarely rejected that argument in *Williamson,* as constitutional protections are not so easily abrogated by papering over isolated confinement conditions with words like "administrative segregation" or "medical isolation." 912 F. 3d at 174-77 (acknowledging that "administrative segregation generally refers to solitary confinement" and refusing to allow the use of "administrative segregation" to dictate whether the confinement restrictions were truly administrative or disciplinary).

    1.   *Restrictions Imposed on Ms. Johnson by Hearing Officers Were Not Rationally Related to a Legitimate, Nonpunitive Government Purpose.*

Defendants rely on facts outside of Ms. Johnson's allegations to provide a nonpunitive purpose for their actions. Def.'s Mot. to Dismiss at 6 (arguing Ms. Johnson's placement in isolated confinement arose and continued "pursuant to jail policies and procedures for inmates who refuse the COVID-19 test and for inmates with mental health conditions.").

Even if this argument merited consideration at this stage of the litigation, Ms. Johnson alleges the existence of housing in medical isolation that served as a less punitive means of promoting the same managerial and security goals cited in Defendants' Motion. SAC ¶ 49.[3] Ms. Johnson further alleges Hearing Officers were aware of this alternative prior to the occurrence of any of the disciplinary hearings at issue, as Teye himself served as a member of the Institutional Classification Committee responsible for determining the appropriate housing assignment for individuals with substantial mental health needs. SAC ¶¶ 47, 49.

The alleged misconduct in which Ms. Johnson engaged directly resulted from her deteriorating mental health. Rather than refer Ms. Johnson to the Institutional Classification Committee for re-evaluation of her housing assignment to segregation once this problem became apparent, Hearing Officers instead carried out a series of disciplinary hearings in response to the behavior of Ms. Johnson they alleged constituted misconduct. Hearing Officers knew Ms. Johnson

---

[3] After her final disciplinary hearing on June 27, 2021, the Institutional Classification Committee (ICC) determined that Ms. Johnson should be moved to medical isolation. SAC ¶ 49. Despite this determination, Ms. Johnson remained housed in segregation, where she ultimately gave birth to her baby on August 3, 2021. SAC ¶ 50. This failure to follow the recommendations provided by the ICC further underscores the lack of a rational relation between the restrictions imposed upon Ms. Johnson and any legitimate, nonpunitive government purpose.

to be incapable of meaningfully participating in these hearings, but repeatedly issued discipline against her following each hearing.

Ms. Johnson alleges that Hearing Officers prolonged her segregation with express punitive intent. Hearing Officers sentenced Ms. Johnson to continued isolation and restricted privileges following a series of disciplinary hearings for the express purpose of punishing Ms. Johnson for the alleged misconduct that gave rise to those proceedings. SAC ¶¶ 31-33, 35-37, 40-44, 46-50.[4]

> 2. *The Rational Purpose Defendants Provide Does Not Account for All Disciplinary Restrictions Imposed on Ms. Johnson.*

Defendants put forward a rational purpose only for the initial decision to place Ms. Johnson in segregation following her intake at RRJ. This purpose does not account for additional punitive actions against Ms. Johnson that were ordered by the Hearing Officers following the disciplinary hearings at issue: continued isolation as well as an additional restriction of privileges. SAC ¶¶ 33, 37; Answer to SAC ¶¶ 33, 37.

Defendants do not assert any administrative purpose for imposing additional restrictions on Ms. Johnson's privileges. Pursuant to *Williamson* and *Bell*, such restrictions — absent a

---

[4] On **June 7, 2021**, Connolly sentenced Ms. Johnson to three days of isolation for failure to obey orders. Ms. Johnson spent the next fourteen days in solitary confinement. SAC ¶¶ 33–36.

On **June 21, 2021**, Brown sentenced Ms. Johnson to three days of isolation for failure to obey orders. Ms. Johnson spent the next eleven days in solitary confinement. SAC ¶¶ 37–41.

On **July 2, 2021**, Teye postponed a disciplinary proceeding for a charge related to Ms. Johnson's behavior. Ms. Johnson spent the next five days in solitary confinement. SAC ¶¶ 42–43.

On **July 7, 2021**, Teye sentenced Ms. Johnson to time-served for the same charge addressed on July 2. Ms. Johnson spent the next twenty days in solitary confinement. SAC ¶¶ 45–47.

Finally, on **July 27, 2021**, Teye ordered Ms. Johnson to remain in administrative segregation for failure to obey orders. She spent the next seven days in solitary confinement until she gave birth. SAC ¶ 50.

nonpunitive purpose reasonably related to government interests — can only be deemed as disciplinary in nature. *Williamson*, 912 F.3d at 185 (citing *Bell*, 441 U.S. at 537-39).

B.  Ms. Johnson Plausibly Alleges Hearing Officers' Failure to Provide the Level of Process Required When Restrictions Are Imposed for a Disciplinary Purpose.

Ms. Johnson alleges that the restrictions to which she was subject were disciplinary and, therefore, she is entitled to the procedural requirements recognized by the Supreme Court in *Wolff v. McDonnell*, which include "notice, a hearing, and a written explanation of the resulting decision." 418 U.S. at 557-58, 563-65 (1974). A pretrial detainee must be permitted to "make a statement on his or her behalf, present witnesses and evidence, and ask questions of his or her accuser." *Dilworth*, 841 F.3d at 253; *see also Williamson*, 912 F.3d at 176.

Ms. Johnson's SAC describes the limited process afforded to her by Hearing Officers and the extent to which it fell short of the procedural requirements set forth in *Wolff*. SAC ¶ 32 (providing Connolly read a charge of misconduct issued against Ms. Johnson through her cell door prior to a disciplinary hearing in which she did not participate); ¶ 34 (Connolly did not reassess Ms. Johnson's confinement after her sentenced isolation elapsed); ¶ 36 (providing Brown read a charge of misconduct issued against Ms. Johnson through her cell door prior to a disciplinary hearing in which she did not participate); ¶ 39 (Brown did not reassess Ms. Johnson's confinement after her sentenced isolation elapsed); *see also* SAC ¶¶ 40-50.

Without consideration of the person's competence or capacity to understand the charges and proceedings they face, there is no context in which a person with a liberty interest to be free from some form of confinement or punishment can be deprived of those same interests by the State. *See, e.g.*, *Dusky v. United States*, 362 U.S. 402 (1960) (criminal trials); *Zinermon v. Burch*, 494 U.S. 113, 137 (1990) (consenting to voluntary commitment); *Foucha v. Louisiana*, 504 U.S.

71, 79 (1992) (involuntary commitment); *Diop v. Lynch*, 807 F.3d 70, 75–76 (4th Cir. 2015) (deportation proceedings).[5]

Moreover, government officials act unreasonably when they "abuse . . . their broadly delegated, uncircumscribed power to effect the deprivation at issue." *Zinermon* 494 U.S. at 135–36 (1990) (finding that hospital staff abused their uncircumscribed power when they failed to assess an individual's competency when agreeing to voluntary commitment, and therefore failed to comport with the requirements of due process). Hearing Officer Defendants acted objectively unreasonably when they failed to determine Ms. Johnson's capacity to participate in a disciplinary hearing and nevertheless imposed discipline on Ms. Johnson, despite their knowledge that Ms. Johnson suffered from schizoaffective disorder and showed clear signs of her incapacity to participate in the proceedings. *See* SAC ¶¶ 17–19, 28–29, 30–50.

C. Ms. Johnson Plausibly Alleges Hearing Officers' Failure to Provide the Level of Process Required When Restrictions Are Imposed for Administrative Purposes.

Even if, *arguendo*, the restrictions imposed on Ms. Johnson by Hearing Officers are not deemed disciplinary in nature, Ms. Johnson remained entitled to certain procedural protections when administrative restrictions are imposed.

Pursuant to the Supreme Court's ruling in *Hewitt v. Helms*, such protections include "at least an 'informal, nonadversary review of the information' supporting segregation, including submissions from the detainee, 'within a reasonable time after confining him to administrative segregation.'" *Williamson*, 912 F.3d at 184-85 (quoting *Hewitt*, 459 U.S. 474, 476 (1983)). These protections are required to prevent administrative segregation from being used as pretext, and "to

---

[5] Federal regulations require that disciplinary proceedings be postponed when inmates exhibit signs of incompetence. 28 C.F.R. § 541.6(a). Inmates "will not be disciplined for conduct committed when, as the result of a severe mental disease or defect, [they] were unable to appreciate the nature and quality, or wrongfulness of the act." *Id.* § 541.6(b).

ensure that solitary confinement is not imposed on a pretrial detainee as punishment . . . or indefinitely, in contravention of the accumulated precedents . . .". *Id.* Those reviews must be meaningful enough to take into account the 'facts relating to a particular prisoner.'" *Williamson*, 912 F.3d at 183 (quoting *Hewitt* 459 U.S. at 477 n.9). Ms. Johnson plausibly alleges Hearing Officers' failure to provide even these limited procedural protections.

Ms. Johnson's SAC sets forth the limited process afforded to her by Hearing Officers and the extent to which it fell short of the procedural requirements set forth in *Hewitt*. Pursuant to her Second Amended Complaint, Hearing Officers did not conduct any review of her confinement conditions following the imposition of restrictions at any point prior to Ms. Johnson giving birth. *See* SAC ¶¶ 34, 39, 45. Defendants attempt to recharacterize the nature of Ms. Johnson's June 27, 2021 disciplinary proceeding as a "reassessment" by the ICC, however, this factual argument is unsupported by the allegations in Ms. Johnson's complaint and improper for consideration at this time.

## II.     Hearing Officers are Not Entitled to Qualified Immunity.

For the reasons provided in Section I, *supra*, the Hearing Officers' actions violated the procedural due process rights guaranteed to Ms. Johnson under the Fourteenth Amendment.[6] It is

---

[6] Defendants do not raise the defense of qualified immunity for their failure to meet the procedural requirements attendant to administrative restrictions, namely the failure to conduct periodic reviews of Ms. Johnson's conditions of confinement, and therefore waive that argument. *Short v. Hartman*, 87 F.4th 593, 615 (4th Cir. 2023) (internal quotations omitted) ("Parties waive "an argument by failing to present it in [the] opening brief or by failing to develop its argument—even if its brief takes a passing shot at the issue.").

clearly established that the conduct in which the Hearing Officers engaged constituted a violation of this constitutional right.[7]

It is clearly established that a pretrial detainee remains entitled to certain procedural protections when either administrative or disciplinary restrictions implicating their liberty interests are imposed upon them. As provided in Section I, a pretrial detainee subject to an administrative restriction is entitled to "informal, nonadversary review of the information supporting segregation, including submissions from the detainee, within a reasonable time after confining him to administrative segregation." *Williamson*, 912 F.3d at 184-85 (quoting *Hewitt*, 459 U.S. 474, 476 (1983)). Where a disciplinary restriction is imposed, a pretrial detainee is entitled to notice, a hearing, and a written explanation of the resulting decision. *Williamson*, 912 F.3d at 176.[8] Defendants denied Ms. Johnson the minimum procedural protections afforded to pretrial detainees regardless of whether the administrative or disciplinary standard applies, and the protections attendant to each standard are clearly established and should have been known by Defendants.

The unreasonableness of the Hearing Officers' actions is augmented, not ameliorated by, the obvious limitations from which Ms. Johnson suffered because of her mental health. "Indeed, the very nature of mental illness makes it foreseeable that a person needing mental health care will be unable to understand any proffered explanation and disclosure of the subject matter of the forms

---

[7] Furthermore, as a matter of federal common law, like the probable cause immunity rule challenged in *Gonzalez v. Trevino*, the clearly established standard for qualified immunity should not apply when, as here, government officials make decisions with ample time to consider their actions. *See generally* Brief for Petitioner, *Gonzalez v. Trevino*, No. 22-1025 (U.S. Dec. 12, 2023) (pending judgment before the Supreme Court).

[8] *See also Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 16 n.17 (1978) ("A hearing in its very essence, demands that he who is entitled to it shall have the right to support his allegations by argument however brief, and, if need be, by proof, however informal." (quoting *Londoner v. Denver*, 210 U.S. 373, 386 (1908))).

that person is asked to sign, and will be unable to make a knowing and willful decision whether to consent to admission." *Zinermon*, 494 U.S. at 133 (internal citation omitted).

Contrary to Defendants' allegations, Ms. Johnson's claims seek to impose no additional or unknown burden upon the Hearing Officers. Ms. Johnson's SAC alleges that Hearing Officers were aware and documented her incompetence throughout the proceedings against her. SAC ¶¶ 31, 41, 43-44. Once that observation was made, it should have been obvious to Defendants that Ms. Johnson was unlikely to be able to "make a statement on . . . her behalf, present witnesses and evidence, and ask questions of . . . her accuser." *Dilworth*, 841 F.3d at 253.

The clearly established law of this circuit is the *floor* of rights for a pretrial detainee, all of which are rooted in the requirement that, before disciplinary restrictions are imposed, a detainee must be provided with a true ability to engage the charges against them. *See Sims v. Labowitz*, 885 F.3d 254, 263 (4th Cir. 2017) (quoting *Clem v. Corbeau*, 284 F.3d 543, 553 (4th Cir. 2002) ("'Accordingly, a constitutional right is clearly established for qualified immunity purposes not only when it has been specifically adjudicated but also when it is manifestly included within the more general applications of the core constitutional principle invoked.'"). Defendants conducted constitutionally insufficient proceedings with knowledge that Ms. Johnson lacked the mental capacity to participate, and that, on at least one occasion, without her even being physically present. *See* SAC ¶¶ 18, 31, 38, 42, 44, 47–49, and 88.

Hearing Officers proceeded as if Ms. Johnson's presence was irrelevant, and as if a disciplinary hearing is a "hollow formalit[y]" as opposed to a meaningful proceeding with constitutional implications. *Thorpe v. Clarke*, 37 F.4th 926, 946 (4th Cir. 2022) (internal quotations omitted). Certainly, "no reasonable official could have believed that a pretrial detainee could be disciplined [with this] level of due process." *Williamson*, 912 F.3d at 188 (internal quotations

omitted). Accordingly, the Court should find the Hearing Officers are not entitled to qualified immunity with respect to Ms. Johnson's constitutional claim against them.

**III.    Ms. Johnson's Procedural Due Process Claims Were Timely Filed.**

The proper statute of limitations for § 1983 actions for personal injury suits brought in the state of Virginia is two years. Ms. Johnson's procedural due process claims are timely because they either (1) were tolled under Virginia law for the period she remained incapacitated; or (2) allege continuing violations.

A.   Ms. Johnson's Procedural Due Process Claims Were, At the Very Least, Tolled for 61 Days under Virginia Law.

Ms. Johnson's claims are timely because under Virginia law, after a claim accrues, the statute of limitations is tolled for any period of time in which a plaintiff is incapacitated. *See* Va. Code Ann. § 8.01-229. An incapacitated person is someone a court deems or has deemed "incapable of receiving and evaluating information effectively or responding to people, events, or environments to such an extent that the individual lacks the capacity to meet the essential requirements for his health, care, safety, or therapeutic needs." Va. Code Ann. § 64.2-2000.

After Ms. Johnson's child died at RRJ on August 3, 2021, Ms. Johnson was transferred to Western State Hospital, a mental health facility, on August 4, 2021 and remained in the hospital for eighty-six days. SAC ¶ 83. According to hospital records, the hospital concluded Ms. Johnson lacked the capacity to make her own medical decisions from August 4, 2021 through October 8, 2021 (sixty-one days). SAC ¶¶ 81–82. After the initial August 4, 2021 determination, the hospital received judicial authorization to administer treatment without Ms. Johnson's consent, including antipsychotic medication, on August 6, 2021. SAC ¶¶ 80-81. This authorization remained in place for the duration of Ms. Johnson's time at Western State. SAC ¶ 80.

Under the Virginia tolling statute, "a person shall be deemed incapacitated if [s]he is so adjudged by a court of competent jurisdiction, or if it shall otherwise appear to the court or jury determining that such person is or was incapacitated within the prescribed limitation period." Va. Code Ann. § 8.01-229(2)(b). Here, a court made that determination on August 6, 2021. SAC ¶ 80. The court determined Ms. Johnson lacked capacity to make her own medical decisions over a period of sixty-one days and authorized the hospital to administer treatment without consent over a period of eighty-four days and during that time Ms. Johnson was incapacitated for purposes of tolling.[9]

There is a reasonable inference that the hospital and the court that granted judicial authorization believed Ms. Johnson was "incapable of receiving and evaluating information effectively or responding to people, events, or environments" and thus "lack[ed] the capacity to meet the essential requirements for [her] health, care, safety, or therapeutic needs." Va. Code Ann. § 64.2-2000. Thus, Ms. Johnson was incompetent, and the statute of limitations tolled for at least sixty-one days. As such, Ms. Johnson would have needed to file, at the very earliest, on August 7, 2023.[10] Because Ms. Johnson filed her Complaint on August 1, 2023, her claims are timely.

B.  <u>Ms. Johnson Alleges a Continuing Violation of Her Procedural Due Process Rights and Therefore Her Claims Did Not Accrue Until August 3, 2021 at the Earliest.</u>

---

[9] This Court is also empowered to decide that Ms. Johnson was incapacitated during her time at Western State. Va. Code Ann. § 8.01-229.

[10] Ms. Johnson's claims constituted a continuing violation, and therefore accrued on August 3, 2021 when the violation ceased. *See* Section III.B, *infra*. However, even if the claim accrued on June 7, 2021—the earliest example of a Hearing Officer violating Ms. Johnson's procedural due process rights—and there was no tolling, she would have needed to file on June 7, 2023. With tolling (at least sixty-one days), Ms. Johnson would have needed to file, at the earliest, on August 7, 2023.

Ms. Johnson's claims are timely because they allege a "fixed and continuing practice" of violating her constitutional rights.[11] *See Nat'l Advertising Co. v. City of Raleigh*, 947 F.2d 1158, 1166 (4th Cir. 1991).

> The continuing violation doctrine holds that when a harm has occurred more than once in a continuing series of acts or omissions, a plaintiff may allege a continuing violation for which the statute of limitations runs anew with each violation. A violation is deemed continuing when it would be unreasonable to require or even permit the plaintiff to sue separately over every incident of the defendant's unlawful conduct. Thus, when the continuing violation doctrine is applicable, the statute of limitations begins to run from the date of the last incidence of that violation, not the first.

*Cummings v. GEO Group, Inc.*, No. 3:23CV327, 2024 WL 250795, at *2 (E.D. Va. Jan. 23, 2024) (internal quotations marks and citations omitted); *see also DePaola v. Clarke*, 884 F.3d 481, 486–87 (4th Cir. 2018). At the very earliest, Ms. Johnson's procedural due process claims accrued on August 3, 2021, when the violations ended because she was transferred out of her administrative segregation cell. *See* SAC ¶ 50.

Here, Defendants' actions and failures to act relate to a single pattern of conduct: perpetuating Ms. Johnson's isolation in solitary confinement without affording her an adequate disciplinary proceedings or periodic review. Ms. Johnson sufficiently alleged that she suffered in isolated confinement conditions from June 7 to August 3, 2021 because of Hearing Officers "fixed and continued practice" of failing to conduct any meaningful periodic review.

---

[11] The continuing violation doctrine applies to procedural due process claims. *See Godbold v. Cherokee County*, No. 1:20-cv-00202, 2021 WL 1178060, at (W.D.N.C. Mar. 29, 2021) (citing *Grabarczyk v. Stein*, No. 5:19-CV-48-BO, 2019 WL 4235356, (E.D.N.C. Sept. 4, 2019) for the proposition that the continuing violation doctrine applies to procedural due process claims); *Cummings v. GEO Group, Inc.*, No. 3:23CV327, 2024 WL 250795, at *2 (E.D. Va. Jan. 23, 2024) (applying the continuing violation doctrine to an understaffing claim, and collecting cases demonstrating continuing violation applies broadly).

The actions here are "continuing" rather than "discrete acts of discrimination" because it would be unreasonable (and inefficient) to "require or even permit," *Tarpley v. Hogan*, No. GLR-15-735, 2016 WL 4888914, at *7 (D. Md. Sept. 15, 2016), Ms. Johnson to sue Hearing Officers Teye, Connolly, and Brown separately when their individual unconstitutional conduct formed part of a pattern of ongoing failure to provide any meaningful hearing or review regarding Ms. Johnson's detention in solitary confinement.

Finally, Ms. Johnson plausibly alleged that Hearing Officers made multiple related decisions to maintain her solitary confinement without due process, which is sufficient for her to survive a motion to dismiss. *Cf. Riddick v. Mathena*, No. 7:20-cv-00449, 2023 WL 2572065, at *4–5 (W.D. Va. Mar. 20, 2023) (refusing to dismiss claims as untimely at motion to dismiss stage when complaint alleged that jail officers made multiple decisions declining to transfer inmate to conditions appropriate for his mental health needs). Because Hearing Officers *never* provided Ms. Johnson with any procedurally adequate disciplinary hearing or any meaningful review of her confinement conditions, Ms. Johnson's claims accrued at the earliest upon her transfer to the hospital on August 3, 2021. Thus, Ms. Johnson's claims are timely under the continuing violation doctrine.

## IV.     Ms. Johnson's Claims Arising Under the ADAA, Rehabilitation Act, and Affordable Care Act Are Subject to a Four-Year Statute of Limitations and Timely Filed.

A four-year statute of limitations applies to Plaintiff's claims because discrimination against her disability was made cognizable by the ADA Amendments Act of 2008 ("ADA Amendments" or "ADAA"). *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004). Plaintiff's claims were not cognizable under the Americans with Disabilities Act of 1990 ("1990 ADA") because her schizoaffective disorder does not substantially interfere with her ability to

perform activities central to daily life on a permanent or consistent basis and symptoms of her condition are ameliorated through medication. Because the ADAA ensured that one's ability to successfully manage their condition would no longer disqualify them from the ADA's coverage, Plaintiff's claim became cognizable in 2009 and is covered under a 4-year statute of limitations.

Defendants argue that Plaintiff's schizoaffective disorder was cognizable under the 1990 ADA because her "need to medicate is permanent." Mem. in Supp. of Defs.' Mot. to Dismiss at 14. This argument is not supported by cases that examined conditions requiring lifelong treatment — like PTSD or epilepsy — under the 1990 ADA and found such conditions did not constitute a disability. *See Rohan v. Networks Presentations LLC*, 375 F.3d 266, 276 (4th Cir. 2004), *superseded by statute*, ADAA (PTSD); *E.E.O.C. v. Sara Lee Corp.*, 237 F.3d 349, 352 (4th Cir. 2001), *superseded by statute*, ADAA (epilepsy).

Under the 1990 ADA, Plaintiffs with treatable, long-term impairments still had to show they were "'significantly restricted' relative to 'the average person in the general population'" after treatment. *Rohan*, 375 F.3d at 276 n.18 (emphasis added). Given this heavy burden, schizophrenia that "may be corrected or mitigated by medication" would not have constituted a disability as defined under the original version of the Act. *Atwell v. Hart Cnty.*, 122 F. App'x 215, 219 (6th Cir. 2005), *superseded by statute*, ADAA.[12]

---

[12] Before the ADAA, many plaintiffs had ADA and Rehabilitation Act (RA) claims dismissed because they failed to prove their schizophrenia substantially impacted a major life activity. *See, e.g.*, *Greene v. Potter*, 240 F. App'x 657, 659–60 (5th Cir. 2007), *superseded by statute*, ADAA (holding plaintiff who took medication to control schizophrenia was not disabled under the RA); *Herschaft v. N.Y. Bd. of Elections*, No. 00 CV 2748 (CBA), 2001 WL 940923, at *1 (E.D.N.Y. Aug. 13, 2001), *aff'd*, 37 F. App'x 17 (2d Cir. 2002), *superseded by statute*, ADAA (holding plaintiff's diagnosed paranoid schizophrenia did not substantially limit a major life activity); *Johnson v. Maynard*, No. 01 CIV. 7393 (AKH), 2003 WL 548754, at *4 (S.D.N.Y. Feb. 25, 2003), *superseded by statute*, ADAA, (holding plaintiff's "paranoid schizophrenia and bipolar illness" did not "necessarily limit any major life activity").

Defendants' reliance on *Latson* at this stage is unavailing. In *Latson*, the court held at the motion to dismiss stage that "[t]he statute of limitations issue raised by the defendants is not one that I can resolve at this procedural stage" because "the evidence may show" that "the mediation of his condition through medication . . . would have negated his claims" under the 1990 ADA. The same holds true for Ms. Johnsons' schizoaffective disorder. Because Ms. Johnson's schizoaffective disorder is clearly covered under the 2009 ADAA's changes to both the ADA and the RA, and because her claims were not cognizable under the 1990 ADA, Ms. Johnson is entitled to the four-year catchall statute of limitations and Defendants' Motion must be denied.[13]

## V.   Ms. Johnson Plausibly Alleges Defendants' Disability-Based Discrimination Against Her in Violation of the ADAA, Rehabilitation Act, and Affordable Care Act.

To state a claim for discrimination under the ADAA, Rehab Act, or ACA a plaintiff must allege that she (1) is disabled, (2) is otherwise qualified to receive a public service, and (3) was excluded from or denied the benefits of such service on the basis of her disability. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005). A plaintiff "need not show 'discriminatory animus' to prevail on a claim for damages under Title II of the ADA or § 504 of the Rehabilitation Act." *Paulone v. City of Frederick*, 787 F. Supp. 2d 360, 317, 405 (D. Md. 2011) (citing *Pandazides v. Virginia Bd. of Educ.*, 13 F.3d 823, 830 n.9 (4th Cir. 1994)).

Although the ADAA, Rehab Act, and ACA "generally are construed to impose the same requirements," the statutes have different "causation standards." *Constantine*, 411 F.3d at 498 n.

---

[13] To be cognizable under the 2009 ADAA, Ms. Johnson must only plead that her lifelong impairment, in its active and unmedicated state, substantially limits her in a major life activity. 42 U.S.C.A. § 12102(4)(D)-(E). Under this test, "it should easily be concluded" that "schizophrenia substantially limit[s]" a major life activity, 29 C.F.R. § 1630.2 (2012), even though it "may be episodic." 29 C.F.R. pt. 1630, App. (2016).

17. The ADAA requires that disability 'played a motivating role' in the discrimination. *Id.* The Rehab Act and ACA require, at most, that disability was a but-for cause in the discrimination. *See Basta v. Novant Health Inc.*, 56 F.4th 307, 317 (4th Cir. 2022) (finding claims under the ACA and RA claims cognizable without allegations that the hospital *only* failed to provide an interpreter because the plaintiff was deaf).

Ms. Johnson's complaint incorporates the factual allegations made throughout and the specific allegations of discriminatory intent made within her ADA and RA sections into her ACA claim, and therefore her claim should be treated as properly pled. SAC ¶ 135; *c.f.* Defs.' Mem. in Supp. of Mot. to Dismiss at 16 (arguing that Ms. Johnson's ACA claim makes no allegations against Defendants).

The discriminatory animus of Teye, Brown, and Conolly against Ms. Johnson on the basis of her disability is demonstrated by their respective decisions to discipline Ms. Johnson for conduct that arose as a direct result of her mental health. The first written allegation of misconduct brought against Ms. Johnson expressly stated that her failure to obey orders occurred because of her mental health condition. SAC ¶ 31. Defendants' decision to discipline Ms. Johnson for behavior directly attributable to her mental health provides a sufficient factual basis from which she can maintain her claims of disability-based discrimination. *See, e.g.*, *Thorpe v. Va. Dep't of Corr.*, 2020 U.S. Dist. LEXIS 255972, *130, *R & R adopted in part*, 2021 U.S. Dist. LEXIS 112284 (W.D. Va. June 15, 2021) (providing plaintiffs stated disability-based ADA and RA claims where they alleged defendants knew their mental health conditions resulted in the very behavior used to retain them in solitary confinement).

Disparate treatment under the ADA "is not . . . limited to only those instances of 'uneven treatment [among] similarly situated individuals'" but also includes unjustified limitations on a

19

disabled person's access to the medical and community services that are available to others, including but not limited to basic hygiene needs, paperwork to access medical and mental health services, and emergency medical care. *Jonathan R. v. Just.*, No. 3:19-CV-00710, 2023 WL 184960, at *18 (S.D.W. Va. Jan. 13, 2023) (discussing unjustified institutionalization). Defendants denied Ms. Johnson an opportunity to meaningfully participate in a disciplinary proceeding and effectively advocate in her defense.[14]

Coleman, Shell, and the Cell Check Officers (Defendants Wallace, Coles, Jackson, and O'Connor) discriminated against Ms. Johnson throughout her detention at RRJ. Defendants' arbitrary denial of medical forms requested by Ms. Johnson's unjustifiably limited her access to services to which she was otherwise entitled. Plaintiff alleges these requests were outright ignored by Wallace, Coleman, Coles, Jackson, O'Connor, and Shell. SAC ¶¶ 117, 119. Moreover, Defendants Coleman and Shell harassed her for making requests for medical services—requests that were necessitated by her medical conditions. SAC ¶¶ 27, 100.

The natural and reasonable inference of these irrational denials and harassment is that Defendants did not find Ms. Johnson's expressed need for help credible. SAC ¶ 109. Even if defendants were *motivated* by a desire to not deal with Ms. Johnson's heightened needs, their deliberate indifference to her needs nonetheless still violates the ADA, RA, and ACA. *See Basta*, 56 F.4th at 315 (recognizing that the ADA prohibits "thoughtless and indifferent discrimination" which arises out of "benign neglect").

---

[14] State law guidance requires an opportunity for assistance in disciplinary proceedings, 6 Va. Admin. Code 15-40-833(3), and federal regulations prohibit disciplining individuals for conduct committed where they are not able to appreciate the wrongfulness of the act. 28 C.F.R. § 541.6. Defendants provided neither an opportunity for assistance nor an evaluation of her competence, despite evidence that these accommodations are not only reasonable, but required. Defendants' failure to accommodate her participation in these proceedings at all over eight weeks amounted to deliberate indifference to her federal rights.

Cell Check Officers further discriminated against Ms. Johnson on August 3, 2021 when they failed to perform the mental health checks she required. SAC ¶¶ 9, 53, 57, and 102. It can be inferred from Defendants actions in ignoring Ms. Johnson for the entire evening that they either did not believe she required monitoring as a result of her mental health, or didn't believe she deserved their assistance.

## CONCLUSION

Defendants should not be allowed a second chance to dismiss claims that have already been addressed by this Court in prior Motions to Dismiss. For the reasons stated above, Plaintiff respectfully requests this Court deny the Motion to Dismiss filed by Defendants Paul Wallace, Gregory Coleman, Tony Coles, Joseph Jackson, Patrick O'Connor, Terrence Shell, Shawn Connolly, Stephenie Brown, Peter Teye, and Rappahannock Regional Jail Authority.

Dated: May 17, 2024                         Respectfully submitted,

/s/ Nicole M. Rheault
Nicole M. Rheault (D.C. Bar No. 1780028)
(*pro hac vice*)
Genevieve Mesch (D.C. Bar No. 90008005)
(*pro hac vice*)
CIVIL RIGHTS CLINIC
GEORGETOWN UNIVERSITY LAW CENTER
600 New Jersey Avenue NW, Suite 352
Washington, DC 20001
Phone: (202) 661-6721
Nicole.Rheault@georgetown.edu
Genevieve.Mesch@georgetown.edu

/s/ Joshua Erlich
Joshua Erlich, VA Bar No. 81298
Katherine L. Herrmann, VA Bar No. 83203

THE ERLICH LAW OFFICE, PLLC
1550 Wilson Blvd., Ste. 700
Arlington, VA  22209
Tel:     (703) 791-9087
Fax:     (703) 722-8114
Email: jerlich@erlichlawoffice.com
          kherrmann@erlichlawoffice.com

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 17, 2024, I filed a copy of the foregoing document with the

Clerk of the Court using the CM/ECF system, which will provide copies to all counsel of record

who have entered appearances.


_/s/ Joshua Erlich_
Counsel for Plaintiff